Sandra FAUCHER and Maine Right to
Life Committee, Inc., Plaintiffs,
Appellees,

v.

FEDERAL ELECTION COMMISSION,
Defendant, Appellant.

No. 90–1832.

United States Court of Appeals,
First Circuit.

Heard Jan. 10, 1991.

Decided March 21, 1991.

Richard B. Bader, Associate Gen. Counsel, with whom Lawrence M. Noble, Gen. Counsel, and Vivien Clair, Atty., were on brief, Washington, D.C., for defendant, appellant.

James Bopp, Jr., with whom Richard E. Coleson, Brames, McCormick, Bopp & Abel, Terre Haute, Ind., Bryan M. Dench and Skelton, Taintor & Abbott, were on brief, Auburn, Me., for plaintiffs, appellees.

Before TORRUELLA and SELYA, Circuit Judges, and POLLAK,* Senior District Judge.

TORRUELLA, Circuit Judge.

Pursuant to a suit filed by the Maine Right to Life Committee, Inc. ("MRLC") and Sandra Faucher, a member of MRLC's Board of Directors, seeking declaratory judgment and injunctive relief, the United States District Court for the District of Maine (Hornby, J.) adjudged a Federal Election Commission ("FEC") regulation, 11 C.F.R. § 114(b)(5)(i), invalid as unauthorized by the Federal Election Campaign Act of 1971, 2 U.S.C. § 431 *et seq.* [hereinafter FECA]. We find no reason to disturb that ruling on appeal.

* Of the Eastern District of Pennsylvania, sitting   by designation.

## FACTS

MRLC is a nonprofit membership corporation organized for the purpose of promoting pro-life issues. MRLC is not affiliated with any political party or campaign committee and does not engage in any business activities other than fundraising. There are approximately 1,800 members associated with the corporation.

MRLC publishes a bi-monthly newsletter, containing educational articles and news of local chapter activities, which is mailed directly to all dues-paying members and is also made available to the general public through schools, churches, etc. Before elections, MRLC conducts candidate surveys to ascertain federal and state candidates' positions on pro-life issues. The survey responses are published in the newsletter. Publication costs for the newsletter are drawn from the corporation's general and educational funds rather than the separate segregated funds of its political action committee.

In 1985, Faucher and MRLC first filed suit against the FEC and the United States Attorney General challenging the validity of FEC regulations governing the publication of voter guides by corporations found at 11 C.F.R. § 114.4(b)(5)(i). That suit was stayed pending the outcome before the Supreme Court of *FEC v. Massachusetts Citizens for Life*, 479 U.S. 238, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986). Thereafter, on February 24, 1989, the suit was dismissed on the ground that the plaintiffs first needed to obtain an FEC advisory opinion as to the legality of any proposed publication, 708 F.Supp. 9. An advisory opinion was sought in May 1989. MRLC submitted a 1988 voter guide to the FEC, which was substantially similar to the guide proposed for 1990. The 1988 guide was entitled "November Election Issue 1988!," was subheaded "Federal & State Candidate Surveys Enclosed—Take-along Issue for Election Day!," featured candidate and party positions on pro-life issues, and contained the following statement: "PLEASE NOTE: A 'yes' response indicates agreement with the National Right to Life position on each question." The guide did, however, also carry a disclaimer which read: "The publication of the MRLC November Election Candidate Survey does not represent an endorsement of any candidate(s) by MRLC."

On February 14, 1990, the FEC issued its advisory opinion, finding the plaintiff's publication unacceptable because it favored a pro-life position and therefore did not qualify as "nonpartisan" under the regulation. As a result, the plaintiffs filed the current lawsuit on April 12, 1990, seeking declaratory judgment (a) that the disputed regulation went beyond the statutory authority and was unconstitutionally vague and (b) that MRLC's proposed 1990 voter guide violated neither the FECA nor the FEC voter guide regulations. An application for preliminary injunction was filed on May 23, 1990. The FEC and Attorney General filed motions to dismiss on June 1, 1990. Following a hearing on June 4, 1990, the application for preliminary injunction was consolidated with the action on its merits.

The district court decided only the issue of whether the regulation in question fell within the statutory authority of the FECA, finding that the plaintiffs lacked standing to challenge the regulation on any of the several other asserted grounds. The district court also found that injunctive relief was inappropriate as that issue was not yet ripe for review. After a careful examination of controlling law, the district court concluded that "the regulation, as promulgated with its focus on issue advocacy, is contrary to the statute [2 U.S.C. § 441b] as the ... Supreme Court has interpreted it and, therefore, beyond the power of the FEC." 743 F.Supp. 64.

## DISCUSSION

Section 441b(a) of the FECA prohibits corporations from using general treasury funds to make "contribution[s] or expenditure[s] in connection with any [federal] election."[1] The FEC, entrusted with regu-

---

**1.** Section 441b(b)(2)(C) allows corporations to establish separate segregated funds for this pur-

latory power under the FECA, has interpreted this provision very broadly to include a ban on corporate financed activities involving express advocacy, discussed *infra* p. 470, as well as issue advocacy. The regulation in question, 11 C.F.R. § 114.4(b)(5), states:

> (5) *Voter guides.* (i) A corporation ... may prepare and distribute to the general public nonpartisan voter guides consisting of questions posed to candidates concerning their positions on campaign issues and the candidates' responses to those questions. The following are factors that the Commission may consider in determining whether a voter guide is nonpartisan:
>
> .    .    .    .    .
>
> (C) The wording of the questions presented does not suggest or favor any position on the *issues* covered;
>
> (D) The voter guide expresses no editorial opinion concerning the *issues* presented nor does it indicate any support for or opposition to any candidate or political party.

(Emphasis added).

### A.

■ First, we face the question of whether the FEC has the authority, under section 441b(a), to restrict issue advocacy or whether the FEC may only restrict express advocacy. Since determining whether a regulation is "reasonably related" to the purposes of the underlying statute is a question of law, this court reviews the district court's decision de novo. *See, e.g., Massachusetts v. Secretary of Health and Human Services*, 816 F.2d 796, 801 (1st Cir.1987), *rev'd in part on other grounds sub nom., Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988).

We begin by defining the scope of the statute. On its face, the statute appears to allow for a very broad application. Our inquiry, however, does not end there.

The Supreme Court, recognizing that such broad language as found in section 441b(a) creates the potential for first amendment violations, sought to avoid future conflict by explicitly limiting the statute's prohibition to "express advocacy." *Buckley v. Valeo*, 424 U.S. 1, 42–43, 96 S.Ct. 612, 645–46, 46 L.Ed.2d 659 (1976); *see also United States v. Thirty–Seven Photographs*, 402 U.S. 363, 369, 91 S.Ct. 1400, 1404–05, 28 L.Ed.2d 822, *reh'g denied*, 403 U.S. 924, 91 S.Ct. 2221, 29 L.Ed.2d 702 *reh'g denied sub nom., United States v. Reidel*, 403 U.S. 924, 91 S.Ct. 2223, 29 L.Ed.2d 703 (1971) ("When the validity of an act of the Congress is drawn in question, and ... a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided"). Express advocacy is language which "in express terms advocate[s] the election or defeat of a clearly identified candidate" through the use of such phrases as "vote for," "elect," "support," "cast your ballot for," "Smith for Congress," "vote against," "defeat," and "reject." *Buckley*, 424 U.S. at 44 and n. 52, 96 S.Ct. at 647 and n. 52. This express advocacy test was again embraced by the Supreme Court in the more recent case of *Massachusetts Citizens for Life*. *See Massachusetts Citizens for Life*, 479 U.S. at 249, 107 S.Ct. at 623. The FEC, however, maintains that the language relied upon in *Massachusetts Citizens for Life* was mere dictum and therefore not binding on this court. We do not agree. All nine Justices assented to that portion of the opinion which states: "We therefore *hold* that an expenditure must constitute 'express advocacy' in order to be subject to the prohibition of § 441b." *Id.* at 249, 107 S.Ct. at 623 (emphasis added). We cannot accept that in resolving constitutional issues such as the one presented in *Massachusetts Citizens for Life*, the Supreme Court proclaims the law lightly. The Court's "basis for deciding [should] not [later be treated as] dictum [simply] because a critic would have decid-

---

pose; however, the action taken by MRLC involved general corporate funds. This section is,

therefore, irrelevant to a determination of the instant case.

ed on another basis." Friendly, *In Praise of Erie—And of the New Federal Common Law,* 39 N.Y.U.L.Rev. 383, 385–86 (1964).

In further support of this position, we note that the second and the ninth circuits have both likewise recognized the express advocacy test. *See Federal Election Commission v. Central Long Island Tax Reform,* 616 F.2d 45, 53 (2d Cir.1980) (section 441d "clearly establish[es] that, contrary to the position of the FEC, the words 'expressly advocating,' mean exactly what they say"); *Federal Election Commission v. Furgatch,* 807 F.2d 857, 860 (9th Cir.), *cert. denied,* 484 U.S. 850, 108 S.Ct. 151, 98 L.Ed.2d 106 (1987) ("We must apply [the FECA] consistently with the constitutional requirements set out in *Buckley* ").

■ We turn next to the issue of whether 11 C.F.R. § 114.4(b)(5) falls within the scope of section 441b(a). Ordinarily, when a statute is silent or ambiguous, "considerable weight should be accorded to an executive department's construction of a statutory scheme it [has been] entrusted to administer." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984), *reh'g denied sub nom., American Iron and Steel Institute v. Natural Resources Defense Council, Inc.,* 468 U.S. 1227, 105 S.Ct. 28, 82 L.Ed.2d 921 (1984). That rule of construction no longer applies, however, once the Supreme Court has spoken on the issue. The Supreme Court is the final authority with respect to statutory construction; therefore, an interpretation given a statute by the Supreme Court becomes the law and must be given effect. *Id.,* 467 U.S. at 843 n. 9, 104 S.Ct. at 2781 n. 9. It is not the role of the FEC to second-guess the wisdom of the Supreme Court.

In limiting section 441b(a) to express advocacy, the Court in *Buckley* clearly had the protection of issue advocacy in mind. *Buckley* reads: "In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential." *Buckley,* 424 U.S. at 14–15, 96 S.Ct. at 632. "Discus-

sion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution." *Id.* at 14, 96 S.Ct. at 632. The FEC nevertheless has sought to restrain that very same activity which the Court in *Buckley* sought to protect. This we cannot allow.

### B.

In the alternative, the FEC argues that even if section 441b(a) is restricted to express advocacy, the speech sought to be regulated in this case was express advocacy and therefore falls within the scope of the FECA. To the extent that this argument asks us to treat the regulation, despite its multiple references to "issue advocacy," as reaching only "express advocacy," the Supreme Court has barred such word games. *See, e.g., Buckley,* 424 U.S. at 42–44, 96 S.Ct. at 645–647 (expressing concern that the "distinction between discussion of issues and candidates may often dissolve in practical application" and adopting a bright-line test that expenditures must "in express terms advocate the election or defeat of a candidate" in order to be subject to limitation); *see also Massachusetts Citizens for Life,* 479 U.S. at 249, 107 S.Ct. at 623. In *Buckley,* the Court quoted *Thomas v. Collins,* 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945), approvingly, on the difficulty of interpreting the meaning and effects of words:

[W]hether words intended and designed to fall short of invitation would miss that mark is a question both of intent and of effect. No speaker, in such circumstances, safely could assume that anything he might say upon the general subject would not be understood by some as an invitation. In short, the supposedly clear-cut distinction between discussion, laudation, general advocacy, and solicitation puts the speaker in these circumstances wholly at the mercy of the varied understanding of his hearers and consequently of whatever inferences may be drawn to his intent and meaning.

Such a distinction offers no security for free discussion. In these conditions

472

it blankets with uncertainty whatever may be said. It compels the speaker to hedge and trim.

*Buckley,* 424 U.S. at 43, 96 S.Ct. at 646 (quoting *Collins,* 323 U.S. at 535, 65 S.Ct. at 325). In our view, trying to discern when issue advocacy in a voter guide crosses the threshold and becomes express advocacy invites just the sort of constitutional questions the Court sought to avoid in adopting the bright-line express advocacy test in *Buckley.*

To the extent that the argument asks that we strike only the impermissible parts of the regulation, we cannot oblige, because we find it necessary to invalidate 11 C.F.R. § 114.4(b)(5)(a) as a whole. We take such action because the regulation's definition of "nonpartisan" inextricably binds its prohibition of issue advocacy with its prohibition of express advocacy. We are therefore unable to sever the offending portion of the regulation from that portion dealing with express advocacy which might otherwise be valid. *Cf. Hodgson v. Minnesota,* —— U.S. ——, 110 S.Ct. 2926, 2934, 111 L.Ed.2d 344 (1990) (when an invalid portion of a statute (or regulation) cannot be severed from the whole, the entire statute must fall).

## CONCLUSION

The first amendment lies at the heart of our most cherished and protected freedoms. Among those freedoms is the right to engage in issue-oriented political speech. The highest court of this land has expressly recognized that as a nation we have a "profound ... commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New York Times v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964). *Buckley* and *Massachusetts Citizens for Life* ensured that right for corporations as well as individuals by limiting the scope of the FECA to express advocacy. We therefore uphold the district court in striking down 11 C.F.R. § 114.4(b)(5)(1) for having overstepped the regulatory boundaries im-

posed by the FECA as interpreted by the Supreme Court.

Affirmed.