WEST VIRGINIANS FOR LIFE, INC., Joseph Shoda, Treasurer of West Virginians for Life, Beth Pruett, Kenneth Pruett, Dallas Bragg, and Karen Suzanna Brooks, Plaintiffs,

v.

Charles R. SMITH, in his official capacity as Prosecuting Attorney for Mercer County, West Virginia, and as a representative of the class of Prosecuting Attorneys in the State of West Virginia, Ken Hechler, in his official capacity as Secretary of State for West Virginia and as an ex-officio member of the West Virginia Election Commission, Defendants.

Civil Action No. 1:96–0068.

United States District Court,
S.D. West Virginia,
Bluefield Division.

Aug. 29, 1996.

William C. Porth, Robinson & McElwee, Charleston, James Bopp, Jr., Bopp, Coleson, Bostrom, Terre Haute, IN, for plaintiffs.

Charles R. Smith, Princeton, pro se.

Darrell V. McGraw, Jr., Attorney General, Amie Johnson, Assistant Attorney General, Charleston, for defendant Ken Hechler, Sec. of State.

*OPINION*

FABER, District Judge.

## I. INTRODUCTION

Plaintiffs (hereinafter referred to as "WVFL") filed this civil action on January 30, 1996, seeking declaratory and injunctive relief arising under the Constitution of the United States of America. Plaintiffs allege that recent amendments to Chapter Three of the Campaign Finance Laws of West Virginia, W. Va.Code §§ 3–1A–1 et seq. (1995), violate the First Amendment by chilling their free speech rights. By Order entered on March 11, 1996, this court preliminarily enjoined defendants Smith and Hechler from enforcing several provisions of Chapter Three of the Campaign Finance Laws of West Virginia.

Plaintiffs subsequently filed a motion for summary judgment. The parties have agreed that this case can be decided by a ruling on WVFL's motion for summary judgment, and the issues have been thoroughly briefed by both parties. Thus, WVFL's summary judgment motion is ripe for the court's consideration.

The facts of this case are set forth in the court's Memorandum Opinion entered on March 11, 1996, and published at 919 F.Supp. 954 (S.D.W.Va.1996). The court finds it unnecessary to repeat the background of this case in detail. Briefly, plaintiffs contend that W. Va.Code § 3–8–5, the "60–day voter guide law", is overbroad because it regulates not only express advocacy, which may be regulated, but also issue advocacy, which may not be constitutionally regulated without a compelling state interest. Plaintiffs further assert that the ban on anonymous voter guides is unconstitutionally overbroad in its regulation of issue advocacy.

## II. STANDARD UNDER RULE 56

Rule 56 of the Federal Rules of Civil Procedure provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving par-

ty is entitled to a judgment as a matter of law.

The moving party has the burden of establishing that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). This burden can be met by showing that the nonmoving party has failed to prove an essential element of his case for which he will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552. If the moving party meets this burden, according to the United States Supreme Court, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552.

Once the moving party has met this burden, the burden shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict in his favor.

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find, by a preponderance of the evidence, that the plaintiff is entitled to a verdict. . . .

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 250–51, 106 S.Ct. at 2511.

## III. ANALYSIS

### A. *West Virginia Code §§ 3–8–5(a), (b) and (e)(1)*

Section 3–8–5(a) of the Campaign Finance Laws of West Virginia requires that the treasurer of any organization "advocating or opposing the nomination, election or defeat of any candidate or the passage or defeat of any issue, thing or item to be voted upon, . . . shall keep detailed accounts of every sum of money or other thing of value received by him . . . and of all expenditures and disburse-

ments made" by such organization for political purposes. Subsection (b) further requires that every organization required to keep detailed accounts pursuant to subsection (a) must also file a detailed itemized statement as set forth in subsection (b)(1)–(4). In addition, section 3–8–5(e)(1) provides that

> any person, association, organization, corporation or other legal entity who publishes, distributes or disseminates any scorecard, voter guide or other written analysis of a candidate's position or votes on specific issues within sixty days of an election is presumed to be engaging in such activity for the purpose of advocating or opposing the nomination, election or defeat of any candidate.

Finally, section 3–8–7 sets forth possible criminal and civil penalties for failure to comply with section 3–8–5.

Because section 3–8–5 regulates political expression at "the core of the protection afforded by the First Amendment," this court must apply "exacting scrutiny" in evaluating this statute. *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 344–46, 115 S.Ct. 1511, 1518–19, 131 L.Ed.2d 426 (1995) (citing *Buckley v. Valeo,* 424 U.S. 1, 14–15, 96 S.Ct. 612, 632–33, 46 L.Ed.2d 659 (1976)). Thus, this court will uphold the statutory restrictions on political speech only if they are "narrowly tailored to serve an overriding state interest." *Id.* at 347, 115 S.Ct. at 1519 (citing *First Nat'l Bank v. Bellotti,* 435 U.S. 765, 786, 98 S.Ct. 1407, 1421, 55 L.Ed.2d 707 (1978)). Defendants argue that section 3–8–5 is narrowly tailored to serve a compelling state interest, that of preventing corruption in candidate elections. (Def.'s Mem. in Response to Plf's Mot. for S.J. at 2.)

This case is governed by the United States Supreme Court's holding in *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), and its progeny. In *Buckley,* "issue advocacy" was described as discussions regarding public issues related to candidates that do not expressly advocate the election or defeat of any candidate. *Buckley,* 424 U.S. at 41–44, 96 S.Ct. at 645–47. "Express advocacy," on the other hand, was defined as "communications that in express terms advo-

cate the election or defeat of a clearly identified candidate." *Id.* at 43, 96 S.Ct. at 646–47. The Supreme Court concluded that the Federal Election Commission restrictions at issue in *Buckley* could only be constitutionally applied to communications containing express words of advocacy. In other words, the *Buckley* court held that "[s]o long as persons and groups eschew expenditures that in express terms advocate the election or defeat of a clearly identified candidate, they are free to spend as much as they want to promote the candidate and his views" *Id.* at 45, 96 S.Ct. at 647.

The *Buckley* court made clear that the extent to which political speech may be regulated turns on the distinction between express advocacy and issue advocacy. Cases which follow *Buckley* have emphasized this distinction. In *Federal Election Comm'n v. Massachusetts Citizens for Life*, 479 U.S. 238, 249, 107 S.Ct. 616, 623, 93 L.Ed.2d 539 (1986), the Supreme Court reiterated that "Buckley adopted the 'express advocacy' requirement to distinguish discussions of issues and candidates from more pointed exhortations to vote for particular persons." Recently, the United States District Court for the District of Maine pointed out that "the Supreme Court has been most concerned not to permit intrusion upon 'issue' advocacy—discussion of the issues on the public's mind from time to time or of the candidate's positions on such issues—that the Supreme Court has considered a special concern of the First Amendment." *Maine Right to Life Comm., Inc. v. Federal Election Comm'n*, 914 F.Supp. 8, 12 (D.Me.1996). The court in *Maine Right to Life* further concluded that "[w]hat the Supreme Court did [in *Buckley]* was to draw a bright line that may err on the side of permitting things that affect the election process, but at all costs avoids restricting, in any way, discussion of public issues." *Id.*

It is clear from the holdings in *Buckley* and its progeny that the Supreme Court has made a definite distinction between express advocacy, which generally can be regulated, and issue advocacy, which generally cannot be regulated. This distinction is pivotal to the outcome of this case.

Plaintiffs would like to engage in "issue advocacy" in West Virginia through the preparation and distribution of voter guides within 60 days of an election. They contend that §§ 3–8–5(a), (b) and (e)(1) are unconstitutionally overbroad because they regulate issue advocacy without a compelling state interest to justify regulation. According to plaintiffs, West Virginia may only regulate express advocacy as defined by the Supreme Court, and issue advocacy, such as the voter guides that WVFL wishes to distribute, is entitled to the broadest First Amendment protection from government regulation.

■ Based on the authority set forth above, there are two fatal problems with section 3–8–5 as enacted by the West Virginia legislature. First, section 3–8–5(a) requires any organization "advocating or opposing the nomination, election or defeat of any candidate or *the passage or defeat of any issue, thing or item to be voted upon*" to keep detailed accounts of all expenditures made by such organization for political purposes. W. Va.Code § 3–8–5(a) (emphasis added). This section of the statute is overbroad, in that it imposes the same requirements on an organization engaging in issue advocacy as it does on an organization engaging in express advocacy. A similarly broad provision was at issue in *Buckley,* and the Supreme Court specifically held that only spending in support of express advocacy of the election or defeat of a clearly identified candidate could be constitutionally regulated. The language of section 3–8–5(a) inextricably combines the regulation of issue advocacy, which is constitutionally prohibited, with the regulation of express advocacy.

■ Second, the court finds that section 3–8–5(e) includes an unconstitutional presumption. As stated above, the Supreme Court has held that only express advocacy may be constitutionally regulated. Section 3–8–5(e) includes a presumption that anyone who disseminates a voter guide or score card, no matter what its content, within sixty days of an election, is engaging in express advocacy.

Such a presumption is untenable under the holding of the Supreme Court in *Buckley*.[1]

In enacting this presumption, the West Virginia legislature has defined as express advocacy the very same activity which the Court in *Buckley* sought to protect. *See Buckley*, 424 U.S. at 14, 96 S.Ct. at 632 ("Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution.") The Court in *Buckley* handed down a definition of express advocacy which "at all costs avoids restricting, in any way, discussion of public issues." *Maine Right to Life Committee*, 914 F.Supp. at 12. The West Virginia legislature, in enacting section 3–8–5(e), ignored the mandate of the United States Supreme Court. The effect of the presumption in section 3–8–5(e) is to regulate political advocacy which the Supreme Court has stated is protected by the First Amendment, and this, the West Virginia legislature cannot do. Accordingly, the court finds that, because section 3–8–5(e)(1) conclusively presumes that voter guides constitute express advocacy if they are distributed within sixty days of an election, the section is unconstitutionally overbroad.

Defendants have defended the constitutionality of both of these statutory sections by arguing that voter guides do, in fact, "expressly advocate election or defeat" of a candidate. (Mem. in Response at 3–4.) Defendants' argument must fail for two reasons. First, defendants ignore the fact that the definition of regulated conduct found in section 3–8–5(a) does not encompass only political expression which expressly advocates election or defeat of a candidate. The statute explicitly applies to advocacy of or opposition of "the passage or defeat of any issue, thing or item to be voted upon." Even if, accepting defendants' argument, specific voter guides prepared by plaintiff are, in fact, express advocacy, the statutory language stated above encompasses issue advocacy and is unconstitutionally overbroad.

Second, defendants' position is contrary to the relevant case law. Several cases have addressed the issue of whether voter guides constitute express advocacy, and have found that they do not. Relying on the bright line test set forth in *Buckley*, the court in *Clifton v. Federal Election Comm'n*, 927 F.Supp. 493 (D.Me.1996), found that the Federal Election Commission ("FEC") regulations at issue in that case, which applied specifically to voter guides, were invalid "because they restrict issue advocacy in connection with expenditures." *Id.* at 500. The United States Court of Appeals for the First Circuit, in *Faucher v. Federal Election Comm'n*, 928 F.2d 468 (1st Cir.), *cert. denied*, 502 U.S. 820, 112 S.Ct. 79, 116 L.Ed.2d 52 (1991), addressed a similar issue. In *Faucher*, the plaintiffs challenged a FEC regulation which allowed corporations to prepare and distribute voter guides only if they were non-partisan and expressed no opinion on the issues. Applying the bright-line definition of express advocacy set forth in *Buckley*, the court struck down the FEC regulation because it applied to issue advocacy. The court reasoned that "trying to discern when issue advocacy in a voter guide crosses the threshold and becomes express advocacy invites just the sort of constitutional questions the Court sought to avoid in adopting the bright-line express advocacy test in *Buckley*." *Id.* at 472. Thus, defendant Hechler's argument that "a voter guide's '*essential nature*' is express advocacy" must fail. (Def.'s Mem. in Resp. to Plf's Mot. for S.J. at 4.)

In conclusion, the court holds that sections 3–8–5(a), (b), and (e)(1) are constitutionally overbroad. West Virginia has incorporated into these sections definitions of "express advocacy" that are far broader than the definition set forth by the United States Supreme Court. Accordingly, the court will grant plaintiffs' summary judgment motion, and will permanently enjoin the enforcement or application of West Virginia Code § 3–8–5(e)(1) and the enforcement or application of

---

1. In *Colorado Rep. Federal Campaign Comm. v. Federal Election Commission*, —— U.S. ——, 116 S.Ct. 2309, 135 L.Ed.2d 795 (1996), the United States Supreme Court addressed a conclusive presumption and held that the Court of Appeals erred in accepting the government's conclusive presumption that all party expenditures are coordinated. The high court reasoned that "[a]n agency's simply calling an independent expenditure a 'coordinated expenditure' cannot (for constitutional purposes) make it ones" *Id.* at ——, 116 S.Ct. at 2319.

West Virginia Code § 3–8–5(a) and (b) except as to contributions and expenditures which directly relate to express advocacy of the election or defeat of a specific candidate.

### B. West Virginia Code §§ 3–8–5(f) and 3–8–12

■ Plaintiffs next contend that the prohibition of anonymous issue advocacy in West Virginia Code § 3–8–5(f) and § 3–8–12 are unconstitutional. Section 3–8–5(f) prohibits the publication, distribution, or dissemination of a scorecard, voter guide, or other written analysis of a candidate's position within sixty days of an election unless the document includes the name of the party responsible for it. Section 3–8–12 prohibits the publication, issuance or circulation of any anonymous letter, circular, or other publication tending to influence voting at any election

In this court's Memorandum Opinion entered on March 11, 1996, the court emphasized the historical importance of anonymous publication, and the broad protection the First Amendment gives to the right to publish anonymously. In granting the preliminary injunction against the application of sections 3–8–5(f) and 3–8–12, the court relied on the United States Supreme Court's holding in *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995). *McIntyre* presented the question of whether an Ohio statute which prohibited the distribution of anonymous campaign literature was "a 'law ... abridging the freedom of speech' within the meaning of the First Amendment." *Id.* at 336, 115 S.Ct. at 1514. The *McIntyre* Court concluded that because the Ohio statute restricted "core political speech," it was subject to "exacting scrutiny" and must be narrowly tailored to serve a compelling state interest. *Id.* at 347, 115 S.Ct. at 1519.

In *McIntyre,* the Court held that the Ohio statute, which required that any writing tending to "influence" the voters in any election contain the name of the writer, violated the First Amendment. The Court concluded that the State of Ohio's interest in preventing fraud or libel or in providing voters with relevant information was not sufficiently compelling so as to justify the broad prohibi-

tion on anonymous handbills. *Id.* at 348–49, 115 S.Ct. at 1520.

In the present case, defendants have not met their burden of proving that the anonymity provisions of the Campaign Finance Laws of West Virginia are narrowly tailored to serve a compelling state interest. Defendants allege that West Virginia has a compelling interest in "the avoidance of corruption in candidate elections." (Def.'s Mem. in Response to Plf's Mot. for S.J. at 11.) However, there has been no showing by defendants that the avoidance of corruption is a compelling need, or that the statute which the state enacted is narrowly tailored to meet that need. *Shrink Missouri Government PAC v. Maupin,* 892 F.Supp. 1246, 1255 (E.D.Mo. 1995). The state has provided no evidence of such corruption, and "while the court may agree that [corruption in candidate elections] is distasteful, that is not a sufficient basis for interfering with core first amendment rights." *Id.*

In addition, the West Virginia anonymity provisions, like the Ohio statute invalidated in *McIntyre,* do not apply only to fraudulent, false, or libelous statements. *Id.* (quoting *McIntyre,* 514 U.S. at 343–44, 115 S.Ct. at 1517.) Thus, the statute is not narrowly tailored to apply only to misleading or deceptive publications.

Nor are the statutory provisions narrowly tailored so as to regulate only the anonymous publication of express advocacy. As stated by this court in its earlier opinion, the prohibition on anonymous voter guides does not narrowly apply to candidates and their supporters, but sweeps in the activities of independent groups and individuals engaging in issue advocacy. In fact, defendant Hechler admitted that sections 3–8–12(a) and (b), as written, do not apply only to express advocacy situations. (Mem. in Resp. to Plf's Mot. for S.J. at 10). Moreover, the provision in section 3–8–5(f) that any scorecard or voter guide published within sixty days of an election must include the name of the responsible party, is essentially a presumption that any such voter guide or scorecard is express advocacy and can be regulated. The court explained earlier in its opinion why such a provision is unconstitutionally overbroad.

Finally, defendants argue that *McIntyre* does not support a finding that the anonymity provisions are unconstitutional, because the holding in *McIntyre* was limited to an individual who wished to distribute handbills relating to an issue referendum. The court disagrees with defendants' narrow view of the holding in *McIntyre*. The Supreme Court based its holding on the First Amendment's protection of the right to publish anonymous issue advocacy, stating that "[d]iscussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution." *Id.* at 346, 115 S.Ct. at 1518 (citing *Buckley*, 424 U.S. 1, 14, 96 S.Ct. 612, 632, 46 L.Ed.2d 659 (1976)). The Court emphasized that it has always held that "the constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office." *Id.* at 347, 115 S.Ct. at 1519 (citing *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272, 91 S.Ct. 621, 625–26, 28 L.Ed.2d 35 (1971)). Thus, the *McIntyre* Court concluded that not only does the First Amendment protect political speech that "center[s] on a candidate for office," it also protects speech directed at issue-based elections such as the tax referendum that Ms. McIntyre wished to influence with her handbills. *Id.* at 347, 115 S.Ct. at 1519. Finally, the Court emphasized that Ms. McIntyre's speech—"handing out leaflets in the advocacy of a politically controversial viewpoint—is the essence of First Amendment expression." *Id.* Thus, although Ms. McIntyre's factual situation involved only a referendum vote, the Court certainly recognized that issue advocacy relating to candidate elections is also protected by the First Amendment.

Accordingly, the court finds that West Virginia has not shown a compelling state interest to justify its prohibitions on anonymous issue advocacy. West Virginia Code §§ 3–8–5(f) and 3–8–12 are unconstitutionally overbroad, and plaintiffs are entitled to a permanent injunction.

## IV. CONCLUSION

The burdens imposed on political speech by sections 3–8–5(a), (b), (e)(1), and (f), and 3–8–12 of the Campaign Finances Act of West Virginia cannot withstand strict scrutiny. Pursuant to the teachings of the United States Supreme Court, these statutes violate the First Amendment right to free speech.

There are no genuine disputes of material fact remaining in this case, and plaintiffs are entitled to the permanent injunctive relief they seek. Accordingly, in a separate Order entered this date, the court will grant plaintiffs' motion for summary judgment and issue a permanent injunction.

### JUDGMENT ORDER
### AND PERMANENT
### INJUNCTION

For the reasons discussed in the separate Opinion filed in this case today, the court **ORDERS** that the Motion for Summary Judgment filed by plaintiffs on March 22, 1996, is **GRANTED.**

For the reason that the statutes in question violate plaintiffs' free speech rights under the First Amendment to the United States Constitution, as more fully set forth in the separate Opinion filed today, the court further **ORDERS** as follows:

1. Defendants and all members of the defendant class certified by Order entered herein on August 7, 1996, consisting of the fifty-five prosecuting attorneys for West Virginia, are hereby permanently enjoined and restrained from enforcing or applying in any matter the presumption contained in West Virginia Code § 3–8–5(e)(1).

2. Defendants and all members of the defendant class are hereby permanently enjoined and restrained from enforcing the provision contained in West Virginia Code § 3–8–5(f), which prohibits the publication, distribution, or dissemination of a scorecard, voter guide, or other written analysis of a candidate's position within sixty days of an election unless the document includes the name of the party responsible for it. Provided, however, that defendants and members of defendant class may enforce this provision if the scorecard, voter guide, or other written analysis of a candidate's position in question includes words of "express advocacy" as defined in *Federal Election Comm'n v. Massa-*

chusetts Citizens for Life, 479 U.S. 238, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986), such as "vote for," "elect," "support," etc.

3. Defendants and all members of defendant class are hereby permanently enjoined from enforcing the provisions of West Virginia Code, § 3–8–5(a) and (b), except as to contributions and expenditures which directly relate to express advocacy of the election or defeat of specific candidates.

4. Defendants and all members of defendant class are hereby permanently enjoined from enforcing the provisions of West Virginia Code § 3–8–12, which prohibits publication, issuance or circulation of ant anonymous letter, circular or other publication tending to influence voting at any election. Provided, however, that defendants and members of defendant class may enforce this provision if the scorecard, voter guide, or other written analysis of a candidate's position in question includes words of "express advocacy" as defined in Federal Election Comm'n v. Massachusetts Citizens for Life, 479 U.S. 238, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986), such as "vote for," "elect," "support," etc.

5. This permanent injunction shall be binding upon the defendants, Charles R. Smith and Ken Hechler, all members of defendant class consisting of the fifty-five prosecuting attorneys of West Virginia, their agents, servants, employees and attorneys, and upon those persons in active concert or participation with them who receive actual notice hereof by personal service or otherwise.

6. This permanent injunction shall remain in effect until the further order of the court.

The Clerk is directed to retire this case from the active docket and mail certified copies of this Judgment Order and Permanent Injunction and copies of the court's Opinion to all counsel of record.