**PLANNED PARENTHOOD AFFILIATES OF MICHIGAN, INC., a Michigan nonprofit corporation, Plaintiff,**

v.

**Candice S. MILLER, Secretary of State of Michigan, Defendant.**

**No. 98–73301–DT.**

United States District Court, E.D. Michigan, Southern Division.

Sept. 21, 1998.

Robert A. Sedler, Detroit, MI, Michael J. Steinberg, Detroit, MI, Mark Granzotto, Detroit, MI, for Plaintiff.

Gary P. Gordon, Katherine C. Galvin, Assistant Attorneys General, Lansing, MI, for Defendant.

### MEMORANDUM ORDER AND OPINION

HOOD, District Judge.

## I. INTRODUCTION

Plaintiff Planned Parenthood Affiliates of Michigan (hereinafter "PPAM") brought this Motion for Preliminary Injunction and Immediate Hearing seeking injunctive relief in connection with its Complaint for a Declaratory Judgment that Rule 169.39(b) of the Michigan Administrative Code is unconstitutional on its face. Rule 169.39(b) was promulgated by Defendant Candice Miller, Michigan Secretary of State, pursuant to her authority to implement the Michigan Campaign Finance Act. The Rule prohibits the use of a candidate's name or likeness in communications made by a corporation forty-five days prior to an election, unless the corporation uses separate segregated funds for such communications. PPAM asserts that if Rule 169.39(b) is enforced, its constitutional rights under the First Amendment will be violated.

## II. BACKGROUND

PPAM is a not-for-profit corporation organized under Michigan law exclusively for charitable, religious, educational, and scientific purposes. PPAM qualifies as a tax-exempt organization under § 501(c)(3) of the United States Internal Revenue Code, which is subject to the provisions of M.C.L. 169.254. M.C.L. 169.254 prohibits corporations from making contributions or expenditures in political campaigns. Consistent with 26 U.S.C. §§ 501(h) and 4911, which permits public charities to carry on certain grass roots lobbying activities, PPAM communicates frequently with the public to urge them to contact legislators to support or oppose legislation of interest to PPAM. Often this grass roots lobbying is carried on forty-five days before an election, and some of the legislators whose votes or positions are reported upon or whom the public is urged to contact, may at that time be candidates for public office. The Plaintiff brings a facial challenge to the rule, alleging that it is unconstitutionally overbroad under the First Amendment. The Plaintiff asserts it will refrain from making expenditures for such communications because the threatened enforcement of the rule, and as a result will suffer irreparable injury to its First Amendment rights. The Plaintiff seeks injunction and declaratory relief in order to make the necessary plans regarding any expenditures for communications on issues relating to reproductive health services during the fall 1998 session of the Michigan Legislature. If this court does not enter a permanent or preliminary injunction enjoining the enforcement of Rule 169.396, the Plaintiff will refrain from making any such expenditures.

Defendant Michigan Secretary of State promulgated Rule 169.39(b) pursuant to her authority to implement and enforce the Michigan Campaign Finance Act (MCFA). M.C.L. 169.215(1)(e); M.S.A. 4.1703(15)(1)(e). Rule 169.39(b) requires corporations[1] use a separate segregated fund, not the general treasury fund, for communications that use the name or likeness of a candidate made forty-five days prior to an election.

Rule 169.39(b) provides in part:

Except as otherwise provided in this rule, an expenditure for a communication that uses the name or likeness of 1 or more specific candidates is subject to the prohibition on contributions and expenditures in Section 54 of the Act, if the communication is broadcast or distributed within 45 calendar days before the date of an election in which the candidate's name is eligible to appear on the ballot.

Section 54 of the Act, M.C.L. § 169.254 prohibits corporations from making expenditures to support or defeat any candidate for election to state office. Rule 169.39(b) excepts certain non profit organizations. However, Plaintiff does not meet the qualifications for a non profit organization under the Act. Rule 169.39(b) went into effect August

---

**1.** Under the rule, corporations include: corporations, domestic dependent sovereigns, joint stock companies and labor unions.

12, 1998, and will become enforceable on September 19, 1998, forty-five days prior to the 1998 general election.[2]

## III. STANDARD OF REVIEW

Plaintiff requests a preliminary injunction pursuant to Federal Rules of Civil Procedure 65. The Sixth Circuit has identified four criteria for evaluating a motion for a preliminary injunction:

1) whether the moving party has shown a strong or substantial likelihood of success on the merits;

2) whether the moving party has demonstrated that irreparable harm would result if injunctive relief is denied;

3) whether the issuance of the preliminary injunction would cause substantial harm to others; and

4) whether the public interest is served by the issuance of injunctive relief.

*Superior Consulting Co., Inc. v. Walling*, 851 F.Supp. 839, 846 (E.D.Mich.1994); *Parker v. United States Dep't of Agriculture*, 879 F.2d 1362, 1367 (6th Cir.1989); *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985). The four factors are not prerequisites, but rather, they must be balanced. *Superior Consulting*, 851 F.Supp. at 847; *In re Eagle–Picher Industries, Inc.*, 963 F.2d 855 (6th Cir.1992). The parties agreed to consolidate the hearing into a Motion for Permanent Injunction under Fed.R.Civ.P. 65(a)(2), and for the Court to consider the merits of the case. The same factors are to be applied to motions for permanent injunctions. *McDonald & Company Securities, Inc., v. Bayer*, 910 F.Supp. 348 (N.D.Ohio 1995); Fed.R.Civ.P. 65(a)(2).

## IV. ANALYSIS

The Plaintiff's sole argument alleges that Rule 169.39(b) violates the First Amendment, on its face, because a state cannot prohibit or regulate expenditures for communications that merely use the name or likeness of a specific candidate within forty-five days before the election. PPAM claims that it has a

protected First Amendment right to use the name or likeness of a specific candidate in their issue advocacy communications any time before the election. PPAM concedes that the state can prohibit or regulate communications made by a corporation or labor union that constitute express advocacy. Express advocacy is an expenditure that by its terms urges the voter to vote for or against a specific candidate.

M.C.L. 169.254 as noted above, prohibits corporations, including not for profit corporations like Planned Parenthood Affiliates from contributing to or making expenditures for political campaigns, except ballot questions. A violation of this section is punishable as a felony or by a fine. Rule 169.39(b) is intended to implement M.C.L. 169.206(2)(b) which provides that an "expenditure" under M.C.L. 169.254 does not include "an expenditure for communication on a subject or issue if the communication does not support or oppose a ballot question or candidate by name or clear reference."

The Plaintiff asserts that Rule 169.39(b) violates the First Amendment because it is overbroad and impermissibly reaches protected speech in the form of issue advocacy. Issue advocacy expenditures include those expenditures made for or against issues of public importance, rather than for the defeat or election of a clearly identified candidate.

The Plaintiff cites *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) for the proposition that it is unconstitutional to impose limitations on the amount of money a candidate can spend in support of his own campaign. In *Buckley*, the Supreme Court found unconstitutional the provisions of the Federal Election Campaign Act of 1971, 18 U.S.C. §§ 608 et seq., that limited the amount of money that an individual could spend on his own campaign and the amount of money that an individual could spend independently in support of a candidate. The *Buckley* Court adopted the express advocacy requirement in order to avoid problems of overbreadth, and stated the purpose of the requirement was to "distinguish discussion of

---

**2.** Judge Robert Holmes Bell declared the Rule unconstitutional on September 16, 1998 in *Right to Life of Michigan, Inc., v. Candice Miller*, Case No. 1:98–CV–567, 1998 WL 743712, ––– F.Supp.2d ––– (W.D.Mich.1998).

issues and candidates from the more pointed exhortations to vote for particular candidates." *Massachusetts Citizens,* 479 U.S. at 249, 107 S.Ct. 616.

The Plaintiff argues that the holding in *Buckley* applies with full force to efforts to limit independent political expenditures by corporations. *Federal Election Commission v. Massachusetts Citizens for Life,* 479 U.S. 238, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986). The Supreme Court in *Massachusetts Citizens* applied the "express advocacy" requirement of *Buckley* to the provisions of the Federal Election Campaign Act, 2 U.S.C. § 441(b), which prohibits corporations from expending from their general funds on behalf of political candidates. The Court held that an expenditure must constitute express advocacy before it is subject to the prohibition of § 441(b). Noting that the express advocacy requirement of *Buckley* avoided the problem of overbreadth and distinguished between "pointed exhortations" to vote for certain candidates and "discussion of issues," the Court reasoned that a "similar construction of the more intrusive provision that directly regulates independent spending." was required. *Massachusetts Citizens,* 479 U.S. at 249, 107 S.Ct. 616.

*Buckley* and *Massachusetts Citizens* when read together establish a bright line between express advocacy and issue advocacy. The government can regulate express advocacy but issue advocacy cannot be prohibited or regulated.[3]

The Plaintiff also cites *West Virginians for Life v. Smith,* 960 F.Supp. 1036 (S.D.W.Va. 1996), where the court held unconstitutional a law that provided that " a person, association, organization, corporation or other legal entity who publishes, distributes or disseminates any scorecard, voter guide or other written analysis of a candidate's position or votes on specific issues within sixty days of

an election is presumed to be engaging in such activity for the purpose of advocating or opposing the nomination, election or defeat of any candidate." *Id.* at 1038. The Court held that the law was overbroad because the same requirements imposed on an organization engaging in issue advocacy were imposed on an organization engaging in express advocacy. *Id.* at 1039. The sixty day time frame set forth in the West Virginia law was also found to create an unconstitutional presumption that no matter the content, a communication analyzing a candidate's position published within sixty days of an election was express advocacy. *Id.* at 1040.

In sum, the Plaintiff argues that the controlling authority requires this Court to find that Rule 169.39(b), on its face, violates the First Amendment. Rule 169.39(b) goes far beyond prohibiting expenditures for express advocacy, the rule prohibits corporate expenditures for a wide range of issue advocacy communications and chills constitutionally protected speech. The Plaintiff argues that it has met the criteria for granting injunction relief. According to the Plaintiff, Rule 169.39(b) violates the First Amendment on its face, and therefore the likelihood of prevailing on the merits is great. Plaintiff claims that this per se violation of the First Amendment if allowed to go on will cause irreparable injury to its First Amendment rights. The Supreme Court has held that minimal loss of First Amendment rights unquestionably constitutes irreparable injury. *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). As for the third and fourth elements for granting a preliminary injunction, the Plaintiff claims that no harm will befall Defendant if she is enjoined from enforcing the provisions, and it is in the public interest to prevent the violation of a constitutional right. *G & V Lounge v. Michigan Liquor Control Commission,* 23 F.3d 1071, 1076 (6th Cir.1994).

---

**3.** In *Buckley,* the Court went so far as to suggest language that would constitute express advocacy, such as the words, "vote for," "elect," "cast your vote for," "vote against," words that are clearly persuasions of election or defeat. *Buckley,* 424 U.S. at 44, n. 52, 96 S.Ct. 612. In *Federal Election Commission v. Furgatch,* 807 F.2d 857, 864 (9th Cir.1987), the 9th Circuit held that the words suggested in *Buckley* need not be used to constitute express advocacy, but that the language have no other interpretation "but as an exhortation to vote for a specific candidate." The Supreme Court rejected the use of the Buckley specific words and phrases in *Massachusetts Citizens,* 479 U.S. at 249, 107 S.Ct. 616, in favor of a contextual analysis of a "unambiguous message" or "essential nature" standard.

Defendant argues that this Court cannot issue a preliminary injunction where there exist complex issues of law, the resolution of which are not free from doubt. *First National Bank & Trust v. Federal Reserve Bank,* 495 F.Supp. 154, 157 (W.D.Mich.1980). The Defendant argues that the Plaintiff mischaracterizes the scope and impact of the challenged rule. The rule merely prohibits affected organizations from using general treasury funds to pay for communications with the name or likeness of a candidate for the limited time period of forty-five days prior to the election. The Plaintiff is free to make such communications during the forty-five day time period, but must do so using funds contributed to and maintained in a separate segregated fund.

The Defendant claims in a footnote to her brief that the forty-five day time period is tied to the absentee voting time period. Defendant claims this is the critical period with respect to public interest in protecting the electoral process from "distorting and corrosive influences." However, Defendant presents no evidence to support that this period is "critical" with respect to voters or that "critical" legislative events that are a focus of issue advocacy do not occur during that time period as well.

Defendant argues that the Supreme Court in *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) noted that the "application of the overbreadth doctrine ... is, manifestly, strong medicine," to be employed "sparingly and only as a last resort." The Supreme Court in *Broadrick* wrote:

Additionally, overbreadth scrutiny has generally been somewhat less rigid in the context of statutes regulating conduct in the shadow of the First Amendment, but doing so in a neutral non-censorial manner.

. . . . .

To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statutes plainly legitimate sweep. (citations omitted)

Defendant argues that Rule 169.39(b) does not regulate pure speech but instead places careful limits on the source of expenditures by a corporation for a specific type of communication. The rule is content-neutral, and like the statute in *Broadrick,* Rule 169.39(b) seeks to regulate political activity in an evenhanded and neutral manner. In *Broadrick,* a class action was brought on behalf of certain Oklahoma state employees seeking a declaration that a state statute regulating political activity by state employees was invalid. The Court held that the statute was not impermissibly vague and was not unconstitutional on its face, stating that such statutes have in the past been subject to less exacting overbreadth scrutiny. *Id.* at 616, 93 S.Ct. 2908.

Under *Broadrick* there must be a showing that the overbreadth is real and substantial when judged in light of the statute's legitimate sweep. *Broadrick,* 413 U.S. at 616, 93 S.Ct. 2908. The Defendant argues that the state has the authority to regulate campaign finance and to act to protect the election process. As such, the State of Michigan has a long standing public policy against allowing corporations to directly support candidates through expenditures from the general treasury fund. The espoused premise behind governmental regulation of corporate contributions in political campaigns is that corporations should not be able to use amassed corporate wealth to unfairly influence elections. *Federal Election Commission v. National Right to Work Committee,* 459 U.S. 197, 103 S.Ct. 552, 74 L.Ed.2d 364 (1982); *Austin v. Michigan Chamber of Commerce,* 494 U.S. 652, 110 S.Ct. 1391, 108 L.Ed.2d 652 (1990). In *Austin* the Court upheld a provision of the Michigan Campaign Finance Act which provides that corporations could make expenditures in support of a candidate from a separately segregated fund, created under § 54 of the Act. The Court reasoned that because corporations are able to amass great sums of money and enjoy special advantage conferred by state law, the state had a compelling interest in regulating "political speech" of corporations. Evaluated against this legitimate purpose, it is clear that any perceived overbreadth would not be sufficiently real or substantial to support facial invalidation. In light of *Austin,* Defendant

suggests that Rule 169.39(b) may regulate corporate express advocacy by requiring it to be funded by a separate segregated funds.

The Defendant claims that because Rule 169.39(b) is content neutral and regulates conduct the potential impact of this rule on protected conduct must be dealt with on a case by case basis. *New York v. Ferber*, 458 U.S. 747, 773–74, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). At the same time the rule does not impede the Plaintiff's ability to advocate for the passage or defeat of certain legislation. The Defendant further claims that enjoining the enforcement of Rule 169.39(b) is contrary to public interest, as the rule seeks to minimize the "distorting influence" of unregulated corporate expenditures for express advocacy disguised as issue advocacy. This rule further limits the impact of these expenditures by "providing the public with access to greater information about the sponsorship of the communications."

This Court must first determine whether the prohibition of Rule 169.39(b) burdens political speech and if so, whether such a burden is justified by a compelling state interest. *Buckley*, 424 U.S. at 44–4, 96 S.Ct. 612. The Defendant minimizes the impact of the legislation upon PPAM's First Amendment rights by emphasizing that the corporation remains free to establish a separate segregated fund, composed of contributions earmarked for that purpose. However, PPAM is not free to use its general funds for campaign advocacy purposes. While that is not an absolute restriction on speech it is a substantial one, because to speak through a segregated fund PPAM must make very significant efforts to raise monies for each and every specific issue it desires to address to the public.

Rule 169.39(b) is overbroad in its prohibitions. The rule prohibits expenditures made from the general fund that use the name or likeliness of a candidate within forty five days of an election. This rule does not limit its reach to those expenditures that urge voters to vote for or against a specific candidate, or "attack ads" which attack a candidate by name without specifically urging the voter to vote for or against the candidate. The Rule as drafted infringes on protected speech by prohibiting expenditures for issue

advocacy. Interpreting the language of the statute, it is easy to envision that protected speech, in the form of issue advocacy, would be stifled by a fear of violating this rule, and the possible ramifications of such a violation. Similar to the law at issue in *West Virginia for Life, supra,* this rule imposes the same restrictions on an organization engaging in issue advocacy as it does on those engaging in express advocacy. *Id.* at 1039.

The Defendant has expressed a desire to protect the integrity of the electoral process with the implementation of Rule 169.39(b). The Defendant argues that it has a compelling interest in protecting against the real or perceived corrupting influence on the election process by corporations and labor unions. *Federal Election Commission v. National Right to Work Committee,* 459 U.S. 197, 103 S.Ct. 552, 74 L.Ed.2d 364 (1982). The regulation of corporate political activity has been concerned not only with the use of the corporate form per se, but also about the potential for the unfair deployment of wealth for political purposes. A group like PPAM does not pose such threat. The PPAM was formed to disseminate political ideas, not to amass capital. The resources it has available are not derived from its success in the marketplace, but from its popularity with the public. The rationale for the regulation is not compelling with respect to PPAM because individuals who contribute to PPAM are aware of its political purpose and goals, and contribute because they support those purposes and goals. A contributor may not be aware of exactly how his or her contribution will be used, however, with the contribution is an implied delegation of authority to use the funds in a manner that best achieves the goals of the organization. PPAM is not the type of corporation which poses the threat perceived by the Defendant. Therefore, the compelling state interest espoused by Defendant does not justify an infringement on PPAM's First Amendment rights. To the contrary, Rule 169.39(b) directly infringes o the right of PPAM to engage in issue advocacy for periods the legislature is in session directly prior to an election, often a critical period for voting on important and pending legislation of our day. The rule also

reaches non advocacy and speech which is merely informational in nature.

Having reviewed the arguments of the parties this Court is satisfied that Rule 169.39(b) is overbroad and will chill the exercise of constitutionally protected "issue advocacy." There is no support for further intrusion on issue advocacy by the enforcement of this Rule. The Defendant has not shown that the prohibition of the use of corporate treasury funds containing the name or likeness of a candidate, forty-five days before the election is as compelling an interest that it overcomes the potential for the Rule to compromise constitutionally protected speech which cannot be interpreted as supporting or opposing the election of a specific candidate. *Massachusetts Citizens,* 479 U.S. at 249, 107 S.Ct. 616.

Balancing the factors to be considered in a Motion for Permanent Injunction, the Court finds in favor of the Plaintiff. The Court having ruled on the merits in favor of the Plaintiff and finding that enforcing Rule 169.39(b) would chill and irreparably harm Plaintiff's First Amendment rights, a permanent injunction should issue against Defendant prohibiting the enforcement of Rule 169.39(b).

CONCLUSION

The Court finds that Rule 169.39b is unconstitutionally overbroad and infringes on the Plaintiff's First Amendment rights. Plaintiff's request for a Permanent Injunction and Declaratory Judgment is granted.

Accordingly,

IT IS ORDERED that Plaintiff's Motion for Preliminary Injunction, considered by the Court as Motion for Permanent Injunction and Declaratory Judgment (Docket No. 2), is **GRANTED.**

IT IS FURTHER ORDERED that Defendant is permanently enjoined from enforcing Rule 169.39(b) because it is unconstitutionally overbroad.