The FIRST NATIONAL BANK AND TRUST COMPANY OF MICHIGAN, a National Banking Association, Kalamazoo, Plaintiff,

v.

The FEDERAL RESERVE BANK OF CHICAGO DETROIT BRANCH; Kalamazoo County State Bank, Kalamazoo; the American National Bank and Trust Company of Michigan, Kalamazoo; the American National Bank in Portage, Kalamazoo; the Industrial State Bank and Trust Company, Kalamazoo; and First Federal Savings and Loan Association, Kalamazoo, Defendants.

No. K–80–464.

United States District Court,
W. D. Michigan, S. D.

July 23, 1980.

William A. Dornbos, Adams, Burgie, Scott, Ritter & Dornbos, Kalamazoo, Mich., for plaintiff.

Roger G. Allen, Kalamazoo, Mich., for American National Bank and Trust of Michigan and American National Bank in Portage.

James G. Vantine, Jr., Kalamazoo, Mich., for Industrial Bank and Trust Co.

Gordon Kriekard, Kalamazoo, Mich., for Kalamazoo County State Bank.

Ronald B. Stephens, Kalamazoo, Mich., for First Federal Savings and Loan Association in Kalamazoo.

Patricia Tauchert, Legal Dept., for Federal Reserve Bank of Chicago, Detroit Branch.

## OPINION ON PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

ENSLEN, District Judge.

This matter is before the Court on a Motion for Preliminary Injunction. Plaintiff, First National Bank and Trust Company of Michigan (First) seeks to restrain the Defendants from returning and charging back to First any loan disbursement checks or cashier checks through the Federal Reserve Board Operating Circulars 4 and 17 or through the "Local Clearing Agreement".

### Findings of Fact

(1) First has sued Federal Reserve Bank (Federal Reserve); Kalamazoo County Bank (Kalamazoo); American National Bank (American); American National Bank in Portage (American Portage); Industrial State Bank (Industrial); and First Federal Savings and Loan Association (First Federal), invoking the jurisdiction of this Court under 28 U.S.C. § 1331(a).

(2) Plaintiff filed its verified Complaint on July 15, 1980, naming all of the above Defendants.

(3) In Count I, Plaintiff has alleged that Defendant, Kalamazoo issued eight checks totalling $63,396.04 payable to the order of an automobile dealership. These checks were endorsed and were deposited with Defendant First Federal, who, being a customer of Plaintiff First, forwarded, for collection, the eight checks. Plaintiff First processed the checks and submitted them to Defendant Kalamazoo. Defendant Kalamazoo paid on the checks between August 20, 1979 and January 15, 1980.

On June 18, 1980, some 155–299 days after Defendant Kalamazoo had paid on these checks, Defendant Kalamazoo attempted to return the checks because of "improper endorsements" to Defendant Federal Reserve for a provisional credit.

On June 23, 1980, Plaintiff First received the checks back from the Federal Reserve with a debit against its account. On June 24, 1980, Plaintiff First returned the eight checks together with a late return item claim, prepared in accordance with the Federal Reserve Board Operating Circulars 4 and 17.

On June 27, 1980, Defendant Kalamazoo resubmitted the eight checks to Federal Reserve, certifying that Defendant Kalamazoo took all action necessary to entitle it to recover its payment within the time required by Regulation J and that the checks were returned immediately upon obtaining knowledge of the improper endorsements.

On July 2, 1980, Plaintiff First received notice from Defendant Federal Reserve that it had debited or charged against Plaintiff First's Federal Reserve account, a total of $63,396.04. On July 7, 1980, Plaintiff First proceeded to set off the $63,396.04

against Defendant First Federal's account with Plaintiff.[1]

(4) In Count II Plaintiff First alleges in its verified Complaint, that since 1978, it has accepted cashier's checks drawn on Defendant American or Defendant American Portage payable to the auto dealership. Eighteen of the cashier's checks totalling $122,427.99 were deposited into the account of the dealership account or an officer's account. Four cashier's checks totalling $31,862 were deposited with Plaintiff First by Defendant First Federal and credited to Plaintiff First's account. Between May 9, 1979 and April 14, 1980, Defendant American or Defendant American Portage paid all the checks when presented for payment.

On July 8, 1980, Defendants American and American Portage, by letter of their attorney, attempted to return the 22 checks and requested payment from Plaintiff First claiming "improper endorsement". In a letter from Plaintiff First's attorney to Defendants' attorney payment of the checks was refused.[2]

Plaintiff first asserts that if these checks are returned to it, pursuant to either the Kalamazoo Local Clearing House Agreement or the Federal Reserve Board Operating Circulars 4 and 17, Plaintiff will suffer irreparable injury, loss and damage in the amount of $154,339.99.

Defendants, American and American Portage, through counsel at the hearing, contended that no demand for payment of the checks had been made and they had not put the checks through either System, thus, no irreparable harm has occurred, they argue.

(5) In Count III, Plaintiff First accepted 14 loan disbursements on cashier's checks drawn on Defendant Industrial payable to the same dealer crediting 9 of the checks in a sum of $47,560.02 to the dealer's account at Plaintiff First's Bank. Furthermore, Plaintiff First credited 5 other checks in the sum of $40,562.86 to Defendant First Federal's account at Plaintiff First's Bank.

Between September 8, 1979 and April 2, 1980, Defendant Industrial paid the checks. On May 20 and 21, some 49–392 days after payment, Defendant Industrial, through one of its officers, returned the above checks to Plaintiff First and requested payment from Plaintiff claiming payment was "not authorized". Plaintiff refused payment on the items.

As in Count II, Plaintiff First is concerned that Industrial may submit the checks to Federal Reserve pursuant to Circulars 4 and 17, or in the alternative, may attempt to submit such items to Plaintiff First pursuant to the "Local Clearing Agreement".

Counsel on behalf of Defendant Industrial did not speak at the hearing but submitted a brief after the hearing denying that irreparable harm has occurred to the Plaintiff and refuting Plaintiff's contention that there was a denial of due process.

(6) Plaintiff filed its Motion for a Temporary Restraining Order/Preliminary Injunction on July 15, 1980.

(7) On July 16, 1980, the Court issued an Ex Parte Temporary Restraining Order restraining Defendants from returning and charging back loan disbursement and/or cashier checks through the Federal Reserve System or through their "Local Clearing Agreement".

(8) On July 21, 1980, a hearing was held on the Motion for a Preliminary Injunction.

### Discussion

◼ Granting or denying a Preliminary Injunction rests within the sound discretion of the Court. *Oliver v. School District of*

---

1. Count I as to Defendant Kalamazoo, is not at issue since the items have already gone through the Federal Reserve process and a set off in favor of Plaintiff First against Defendant Federal Reserve has occurred.

   In addition, there was no evidence presented at the hearing or in Plaintiff's verified Complaint that Defendant Kalamazoo did not immediately return the checks in good faith when it knew of the "improper endorsement".

2. Defendant American and Defendant American Portage made their request to Plaintiff First some 45–415 days after Defendant American and/or American Portage paid on the checks.

*City of Kalamazoo*, 448 F.2d 635 (CA 6 1971); *Com-Share, Inc. v. Computer Complex, Inc.*, 458 F.2d 1341 (CA 6 1972); 11 Wright and Miller, *Federal Practice and Procedure*: Civil Sec. 2948 at p. 427.

In approaching Plaintiff's request for injunctive relief, there is initially an issue as to the appropriate standard to be applied in ruling on a Motion for Preliminary Injunction under FRCP 65(a).

While the Sixth Circuit has used two formulations in considering whether a Preliminary Injunction should be granted, the Court in *Mason County Medical v. Kneble*, 563 F.2d 256 at p. 261 (CA 6 1977) has clearly set forth the current factors to be weighed by this Court, and control in considering the relief sought by Plaintiff.

■ Thus, the factors to be considered in determining whether preliminary injunctive relief is appropriate are: (1) Whether the Plaintiffs have shown a strong or substantial likelihood or probability of success on the merits; (2) Whether the Plaintiffs have shown irreparable injury; (3) Whether the issuance of a Preliminary Injunction would cause substantial harm to others; (4) Whether the public interest would be served by issuing a Preliminary Injunction.

Although the Sixth Circuit has assigned to these factors no greater weight to one than to another, Wright and Miller, *supra*, suggests that the likelihood that Plaintiff will suffer irreparable harm is the most important prerequisite to be evaluated. Wright and Miller, *supra*, at p. 430. The Court is inclined to agree, but nevertheless, will analyze each of these factors:

### Substantial Likelihood of Success

Plaintiff's claim is predicated on the failure of the National and State Bank Defendants to use good faith or to exercise ordinary care seeking the return or charging back of 36 loan disbursement or cashier's checks, some 46 to 416 days after which they were paid by Defendant banks, and on Federal Reserve's failure to accord due process to Plaintiff or others similarly situated.

Although it appears to the Court that Plaintiff has a likelihood of success, whether it has a "substantial likelihood" as required by *Mason, supra*, is, at this juncture, unclear.

■ It is the Court's opinion that there can be no substantial likelihood of success where there exist complex issues of law, the resolution of which are not free from doubt. This is especially true when the record before the Court is incomplete.

### Irreparable Harm

■ In support of Plaintiff's claim for injunctive relief, Plaintiff alleges that it will suffer irreparable harm in the event that such relief is not granted in that it will be denied the use of the money and thus lose its opportunity to invest. The Court is convinced that any damages suffered by Plaintiff would be capable of adequate money damages after final resolution. It has been held that, where Plaintiff's losses are available in monetary damages, preliminary injunctive relief should be denied. *Nuclear Chicago Corporation v. Nuclear Data, Inc.*, 465 F.2d 428 (CA 7 1972); *A.L.K. Corporation v. Columbia Pictures Industrial, Inc.*, 440 F.2d 761 (CA3 1971); *Dellwood Foods, Inc. v. Kraftco Corporation*, 420 F.Supp. 424 (SD NY 1976); 11 Wright and Miller, *Federal Practice and Procedure*, Section 2948 at 434–436 (1973).

In the present case, the verified Complaint indicates that the essential relief sought is, in the final analysis, money, the amount of which can readily be ascertained. Plaintiff, at the hearing, did not dispute this, nor has it offered any reason why an award of money damages would not adequately compensate it for any injury it might incur as a result of the Defendants' actions.

In addition, it is clear, from the verified Complaint, just exactly how much money is involved. Furthermore, there is no showing that, even if a debit is made to the Plaintiff's account, it will be unable to recover any resulting damages. There is no claim that the Defendant Banks are not financial-

ly able to satisfy any claimed liability to the Plaintiff.

Implicit in Plaintiff's prayer for injunctive relief is its claim that it is entitled to use the money now in its possession in any manner it sees fit. How much it can earn, if the proceeds of the drafts in question remain with it, is too speculative to persuade me of a loss that is irreparable.

In the event that Plaintiff (not having succeeded in its prayer for injunctive relief) should be deprived of the use of the proceeds in question, at some future date, it can seek relief, either in state or federal court, in the form of interest. If successful in its merit claim, it will be entitled to interest on its judgment.[3] Hence, its claim from "loss of use" does not pose a threat of irreparable harm at this time.

### Substantial Harm to Others and Public Interest

■ Regarding factors three and four, the Court is not convinced that substantial harm to Defendants would occur if Plaintiff's Motion for Preliminary Injunction were to be granted. Defendants have already waited between 45 to 415 days to return the checks to the Plaintiff or through the System(s). The Court would not view the continuing restraint on Defendants, to use the Systems to return the checks, as harmful to their cause.

■ As to the public interest, the tremendous number of checks that go through a bank collection process, including a Federal Reserve Bank process, can be as many as 1 million items a day.[4]

Such a process is a matter of public interest and concern. Suspension of the bank collection process by enjoining the Defendants from using these Systems where they may legitimately do so, could bring about disruption of unknown proportions at a later time.

Before reaching my conclusions of law, I observe that I do not here decide the merits

of the case. Notwithstanding that observation, however, I am not unaware that Plaintiff may initially sustain a monetary loss, and may, even, suffer additional harm to it (whether such losses are actionable depends, of course, on a later merit determination). Of concern to me is a potential abuse of the "system" (Federal Reserve or "Local Clearing Agreement"). Such abuse could occur by one or more Defendants' claims for reimbursement being founded on allegedly recently discovered "evidence" of "illegal endorsements", or by other artifice. The delays of Defendants American; American Portage; and Industrial in re-processing the checks in question raise this concern.

No representations have been made that Kalamazoo misused the System(s) in processing the checks, and it also has scant interest in the injunction now sought by First.

I will, however, view with some concern any filings by the Defendant Bank of documents with either System which use language similar to that employed by Defendant Kalamazoo, that being: "The check was returned *immediately* upon knowing of the improper endorsement we are still making a claim for full reimbursement." (Emphasis Supplied)

I expect that "honesty and fact" will prevail among the parties in this suit. Suffice it to say, that I only decide the issues before me on the basis of the present record, aware of my obligation to do no more at this time.

In reviewing the four applicable standards for Preliminary Injunctions, not one weighs persuasively for the Plaintiff. Therefore, Plaintiff's Motion for Preliminary Injunction is denied.

Denial of the Preliminary Injunction is, however, without prejudice to the renewal of the Motion upon showing of any substantial change in the factual situation that would substantially and directly bear upon any of the applicable standards as set forth in *Mason*, and as suggested by this Opinion.

---

**3.** See M.C.L.A. § 600.6013; 28 U.S.C. § 1961; and applicable case law on interest.

**4.** UCC 4–101:1, Official Code Comment.

*Conclusions of Law*

1. The Court has jurisdiction over the parties and subject matter for the purposes of hearing this Motion for Preliminary Injunction.

2. Plaintiff has not established the burden of showing that it will suffer irreparable harm if its Motion is not granted.

3. Plaintiff has an adequate remedy at law for any possible injury to it.

4. Where a monetary value may be placed on a possible injury, it is not irreparable.

5. Plaintiff has failed to establish its burden of showing a substantial likelihood of success on the merits at this time.

6. Public interest involved here outweighs that of the Plaintiffs.

7. Plaintiff is not entitled to the issuance of a Preliminary Injunction.