### RIGHT TO LIFE OF MICHIGAN, INC., Plaintiff,

v.

**Candice MILLER, in her official capacity as the Michigan Secretary of State; and Frank Kelly, in his official capacity as the Michigan Attorney General, Defendants.**

No. 1:98–CV–567.

United States District Court,
W.D. Michigan,
Southern Division.

Sept. 16, 1998.

Donald E. Duba, Flickinger & Plachta, PC, Grand Rapids, MI, Glenn M. Willard, Bopp, Coleson & Bostrom, Terre Haute, IN, for Right to Life of Michigan, Inc.

Gary P. Gordon, Asst. Atty. General, Katherine C. Galvin, Frank J. Kelley, Attorney General, Public Employment & Elections Division, Lansing, MI, for Candice Miller.

Gary P. Gordon, Asst. Atty. General, Katherine C. Galvin, Public Employment & Elections Division, Lansing, MI, for Frank Kelly.

### *OPINION*

ROBERT HOLMES BELL, District Judge.

In this action for declaratory and injunctive relief, Plaintiff Right to Life of Michigan, Inc. challenges the constitutionality of an administrative rule, Rule 169.39b, promulgated by the Michigan Secretary of State on July 27, 1998, pursuant to her authority to implement the Michigan Campaign Finance Act, M.C.L.A. § 169.215(1)(e); M.S.A. § 4.1703(15)(1)(e). The Rule took effect on August 12, 1998. Plaintiff contends the Rule is facially invalid because it is overbroad and violates the First Amendment. Plaintiff seeks to have the rule declared unconstitutional and to have its enforcement enjoined.

On August 27, 1998, this Court granted Plaintiff's motion to consolidate the hearing on Plaintiff's motion for preliminary injunction with the trial on the merits of its verified complaint. A hearing on the merits was held on September 10, 1998.

## I.

Rule 169.39b prohibits corporations, domestic dependent sovereigns, joint stock companies, and labor unions,[1] from using general treasury funds to pay for communications, made within 45 days prior to an election, that contain the name or likeness of a candidate.[2] The rule is subject to specific exceptions that are not at issue here.[3] Violators of the rule are subject to civil and criminal penalties. *See* M.C.L.A. §§ 169.215(8) & 169.254(4).

Plaintiff contends that the Rule is constitutionally overbroad because it impermissibly regulates "issue advocacy," that is, advocacy on politically or socially relevant issues that are not associated with express advocacy in support of specific candidates or electoral outcomes.

According to Defendants Secretary of State Candice Miller and Attorney General Frank Kelly (hereinafter collectively referred to as the "State"), the Rule does not suffer from constitutional overbreadth because it is content neutral, and is narrowly tailored to serve a compelling state interest in the integrity of the electoral process.

The rule at issue in this case, Rule 169.39b, is an administrative rule promulgated by the Secretary of State pursuant to her authority to implement the Michigan Campaign Finance Act ("MCFA"). "Any judicial consideration of the constitutionality of campaign finance reform legislation must begin with and usually ends with the comprehensive decision in *Buckley v. Valeo*, 424 U.S. 1, 96

S.Ct. 612, 46 L.Ed.2d 659 (1976)." *Kruse v. City of Cincinnati*, 142 F.3d 907, 911 (6th Cir.1998). In *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), the Supreme Court addressed the constitutionality of contribution and expenditure limitations on individuals and groups under the Federal Election Campaign Act of 1971 ("FECA"). The Court observed that the Act's limitations operate in an area of the most fundamental First Amendment activities:

> Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political expression in order "to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people."

*Id.* at 14, 96 S.Ct. 612 (quoting *Roth v. United States*, 354 U.S. 476, 484, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957)).

Because of the vital importance in protecting such speech, the *Buckley* Court articulated what has come to be known as the "express advocacy" test. Limitations on expenditures are constitutionally permissible only for communications that "in express terms advocate the election or defeat of a clearly identified candidate for federal office." *Id.* at 44, 96 S.Ct. 612. Application of the expenditure limitations would be limited "to communications containing express words of advocacy of election or defeat, such as 'vote for,' 'elect,' 'support,' 'cast your ballot for,' 'Smith for Congress,' 'vote against,' 'defeat,' 'reject.'" *Id.* at 44 n. 52, 96 S.Ct. 612. Issue advocacy cannot constitutionally be subject to the same spending limitations.

---

1. Hereinafter the Court will use the term "corporation[s]" to refer to all of these organizations collectively.

2. The first paragraph of Rule 169.39b states:
   Except as otherwise provided in this rule, an expenditure for a communication that uses the name or likeness of 1 or more specific candidates is subject to the prohibition on contributions and expenditures in section 54 of the act if the communication is broadcast or distributed within 45 calendar days before the date of

an election in which the candidate's name is eligible to appear on the ballot.
Section 54 of the Act, M.C.L.A. § 169.254, prohibits corporations from making expenditures in support of or in opposition to any candidate in elections for state office.

3. One exception is for qualified non-profit organizations. Plaintiff asserts that it does not qualify under this exception due to its business activities and the fact that its purposes are not limited to political goals.

The Supreme Court recognized the possibility that issue advocacy might incidentally tend to influence the election or defeat of a candidate. "[T]he distinction between discussion of issues and candidates and advocacy of election or defeat of candidates may often dissolve in practical application. Candidates, especially incumbents, are intimately tied to public issues involving legislative proposals and governmental actions." *Id.* at 42, 96 S.Ct. 612.

> Public discussion of public issues which also are campaign issues readily and often unavoidably draws in candidates and their positions, their voting records and other official conduct. Discussions of those issues, and as well more positive efforts to influence public opinion on them, tend naturally and inexorably to exert some influence on voting at elections.

*Buckley,* 424 U.S. at 42 n. 50, 96 S.Ct. 612 (quoting *Buckley v. Valeo,* 519 F.2d 821, 875 (D.C.Cir.1975)).

The Supreme Court reaffirmed the express advocacy requirement in *Federal Election Commission v. Massachusetts Citizens for Life, Inc.,* 479 U.S. 238, 249, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986) ("*MCFL*"). "*Buckley* adopted the 'express advocacy' requirement to distinguish discussion of issues and candidates from more pointed exhortations to vote for particular persons." *Id.* at 249, 107 S.Ct. 616. A corporation's expenditure must constitute "express advocacy" in order to be subject to the restriction on independent spending contained in § 441b of FECA. *Id.* See also *Maine Right to Life Committee, Inc. v. Federal Election Com'n,* 914 F.Supp. 8, 12 (D.Me.) ("What the Supreme Court did was draw a bright line that may err on the side of permitting things that affect the election process, but at all costs avoids restricting, in any way, discussion of public issues."), *aff'd,* 98 F.3d 1 (1st Cir. 1996), *cert. denied,* — U.S. —, 118 S.Ct. 52, 139 L.Ed.2d 17 (1997); *Federal Election Com'n v. Christian Action Network,* 894 F.Supp. 946, 953 (W.D.Va.1995) ("Without a frank admonition to take electoral action, even admittedly negative advertisements such as these, do not constitute "express advocacy" as that term is defined in *Buckley* and its progeny."), *aff'd,* 92 F.3d 1178, 1996 WL 431996 (4th Cir.1996).

The State suggests that the Court should follow the Ninth Circuit and apply a more lenient interpretation of the "express advocacy" rule. In *Federal Election Commission v. Furgatch,* 807 F.2d 857 (9th Cir.1987), the Ninth Circuit did not reject *Buckley's* express advocacy requirement. The Ninth Circuit held, however, that to be subject to reporting requirements under FECA, "speech need not include any of the words listed in *Buckley* to be express advocacy under the Act." *Id.* at 864. Nevertheless, "it must, when read as a whole, and with limited reference to external events, be susceptible of no other reasonable interpretation than an exhortation to vote for or against a specific candidate." *Id.* at 864.

For purposes of this action, this Court need not determine whether "express advocacy" is to be measured strictly by the words used or by a more lenient contextual analysis as suggested in *Furgatch.* The language of Rule 169.39b does not even pass muster under *Furgatch.*

Through this Rule the State has chosen to subject soft money used to pay for issue advocacy advertisements to the disclosure requirements of the MCFA if the ads include the name or likeness of a specific candidate 45 days prior to an election. The Rule is based upon the assumption that when advertisements mention the name of a candidate, they are not issue ads but rather candidate ads. Rule 169.39b, however, does not limit its application to those names or depictions of candidates which, read as a whole, are "susceptible of no other reasonable interpretation but as an exhortation to vote for a specific candidate." Rule 169.39b applies to all references to candidates, whether or not the reference can be construed as an exhortation to vote for or against the candidate. The Court cannot accept the State's assumption that any mention of a candidate within 45 days of an election necessarily falls within the scope of express advocacy.

The Rule prohibits a corporation from naming a candidate within 45 days of an election without regard to the content in which the name is found. The Rule prohibits statements urging the election or defeat of a candidate. In addition to prohibiting express

advocacy, the Rule prohibits issue advocacy and non-advocacy as well. The Rule prohibits a statement that Candidate X introduced or sponsored specific legislation; that Candidate Y voted against specific pending legislation; or that Candidate Z had a birthday, was in an accident, or died. Because such information does not fall within even the broadest definition of "express advocacy," the Rule is clearly overbroad. The Rule prohibits any mention of a candidate's position on issues, and prohibits any mention of a candidate's stance with respect a vote that is to be held within the 45–day period.

In this case the censorial effect of the Rule on issue advocacy is neither speculative nor insubstantial. Samples of Plaintiff's communications published within 45 days of elections reveal that a wide range of topics that have previously been discussed would be prohibited by Rule 169.39b, including articles that mention the sponsors, authors and supporters of specific pending bills, identification of those who testified at hearings, and interviews with candidates.

In light of the guidance given in *Buckley* and its progeny, there can be no real dispute that Rule 169.39b is constitutionally overbroad. Rule 169.39b does not merely prohibit communications that expressly advocate the election or defeat of a clearly identified candidate. It prohibits *any* mention of the name of a candidate within 45 days of an election, *regardless* of the context in which that name is mentioned.

Notwithstanding the fact that the Rule clearly impacts protected issue advocacy, the State contends that any overbreadth is not sufficiently real or substantial to support facial invalidation, and that any overbreadth should be dealt with on a case-by-case basis.

In *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), the Supreme Court noted that facial overbreadth adjudication is "strong medicine," and should be employed "sparingly and only as a last resort." *Id.* at 613, 93 S.Ct. 2908. A state should not be prohibited from enforcing a statute against conduct that is admittedly within its power to proscribe, particularly where conduct and not merely speech is involved, unless the overbreadth is not only real, but substantial as well. *Id.* at 615, 93 S.Ct. 2908.

The State contends that the overbreadth doctrine should not be applied to Rule 169.39b because the rule is a content-neutral, noncensorial regulation of conduct which reaches a whole range of easily identifiable and constitutionally proscribable conduct and does not satisfy the rigorous substantial overbreadth requirement established by the United States Supreme Court. Rule 169.39b only covers a limited time period; it does not prohibit corporations from using general treasury funds for issue advocacy (as long as individual candidates are not named or pictured); and it does not prohibit a corporation from using a candidate's name or likeness within this critical pre-election period as long as such communications are funded through a separate segregated fund. According to the State, these narrowly tailored restrictions serve the compelling state interest of preserving the integrity of the electoral process.

The State correctly asserts that the Rule covers conduct that is within the State's power to proscribe. There is no question that the State can prohibit express advocacy by corporations. This is the subject of § 54 of the MCFA, and the constitutionality of this section has been established by the Supreme Court in *Austin v. Michigan Chamber of Commerce*, 494 U.S. 652, 110 S.Ct. 1391, 108 L.Ed.2d 652 (1990). To the extent the Rule legitimately prohibits express advocacy, the Rule is redundant of the statutory prescription against expenditures and is unnecessary. The purpose of the Rule is clearly to reach those areas that are not covered by the statute. In these areas the Rule reaches too far.

The State has come forward with no authority in support of its proposition that the limited time period justifies the restriction on issue advocacy. Moreover, while the time period is short, it could involve a critical time period for communications. If the legislature is in session and there is pending legislation, that is the time when an issue oriented organization's efforts to promote grassroots lobbying is most important. It is the Rule's impact on legitimate advocacy on pending legislation that the Court finds most

disturbing. A 45–day blackout on using names would protect incumbents seeking re-election from grassroots lobbying efforts on pending legislation, and incumbents would soon learn to schedule votes on controversial legislation during this time period and thus avoid unwanted publicity and attention.

The State contends that the Rule permits issue advocacy, but merely restricts the use of candidates' names. The ban on the use of candidates' names is a heavy burden on highly protected First Amendment expression. Voters have an interest in knowing what legislators are associated with pending litigation, and an organization's ability to educate the public on pending legislation is unduly hampered if they are unable to name the legislators involved.

The State contends that the overbreadth of the Rule is not substantially burdensome because a corporation can still issue communications using a candidate's name or likeness through its segregated political fund. In *Austin* the Supreme Court noted that the segregated fund requirement burdens the exercise of expression. Under the MCFA the segregated fund must have a treasurer, must keep detailed accounts of contributions, must file a statement of organization, and may only solicit contributions from limited sources. M.C.L.A. §§ 169.221–.225. *Austin*, 494 U.S. at 658, 110 S.Ct. 1391. "Although these requirements do not stifle corporate speech entirely, they do burden expressive activity. Thus, they must be justified by a compelling state interest." *Id.* (citations omitted).

Finally, the State contends that it has a compelling state interest in preventing corporations from unfairly using unregulated or soft money to pay for advertisements that are thinly disguised as issue ads but which are in fact and in effect express advocacy in support or opposition of candidates.

In *Austin* the Supreme Court upheld § 54(1) of the Michigan Campaign Finance Act which prohibits corporations from directly supporting candidates through general treasury fund expenditures.[4] While observing that the restriction burdens a corporation's First Amendment right to free speech and association, 494 U.S. at 658, 110 S.Ct. 1391, the Supreme Court held that the burden was justified by a compelling state interest in ensuring that expenditures reflect actual public support for the political ideas espoused by corporations. *Id.* at 660, 110 S.Ct. 1391. The Court noted that the unique state-conferred corporate structure that facilitates the amassing of large treasuries warrants the limit on independent expenditures. *Id.* "Corporate wealth can unfairly influence elections when it is deployed in the form of independent expenditures, just as it can when it assumes the guise of political contributions." *Id.*

The purpose of the Rule is to address the problem of unregulated expenditures by corporations for candidate communications that are made under the guise of issue advocacy but which in fact and in effect are express advocacy communications. Based upon the Supreme Court's recognition of the potential evils associated with the infusion of corporate funds into the election process, the State would have this Court ignore the express advocacy distinction set forth in *Buckley* and adopt instead a less stringent rule that would allow state regulation of *all* corporate speech in the 45 days prior to an election that names or depicts a candidate, *regardless* of the content of the message, on the basis that it might constitute indirect advocacy on behalf of or against a candidate.

This Court is not convinced that *Austin* invites such a departure from *Buckley*. The mere fact that we are dealing with a corporation rather than an individual does not remove its speech from the ambit of the First Amendment. *Austin*, 494 U.S. at 657, 110 S.Ct. 1391. *Austin* does not invite the Court to permit regulation of anything other than express advocacy by corporations. *Austin* only addressed § 54(1) of the MCFA which prohibited "expenditures," i.e., payments in assistance of or in opposition to the nomina-

---

4. Section 54(1) of the MCFA generally prohibits corporations from making expenditures in support of or in opposition to any candidate in elections for state office. Corporations are allowed, however, to expend funds "for the estab-lishment and administration and solicitation of contributions to a separate segregated fund to be used for political purposes." M.C.L.A. § 169.255(1).

tion or election of a candidate. M.C.L.A. § 169.206(1). Under *Buckley,* the expenditures referenced in § 54(1) must be read to apply only to express advocacy. *Austin* did not purport to undermine the express advocacy requirement of *Buckley.* While *Austin* found that the state had a compelling interest in restricting corporations from using their general treasury funds for express advocacy, the Court made no comment that could be construed as a retreat from the express advocacy rule.

Upon careful review of the issues presented by this case, this Court is convinced that Rule 169.39b is facially invalid on overbreadth grounds.

> "The overbreadth doctrine provides an exception to the traditional rules of standing and allows parties not yet affected by a statute to bring actions under the First Amendment based on a belief that a certain statute is so broad as to 'chill' the exercise of free speech and expression." *Leonardson v. City of E. Lansing,* 896 F.2d 190, 195 (6th Cir.1990); *Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). A statute is unconstitutional on its face on overbreadth grounds if there is "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the court. . . ." *Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 801, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984).

*Dambrot v. Central Michigan University,* 55 F.3d 1177, 1182 (6th Cir.1995).

The Court is satisfied that Rule 169.39b is broad enough to chill the exercise of free speech and expression. Because the rule not only prohibits expenditures in support of or in opposition to a candidate, but also prohibits the use of corporate treasury funds for communications containing the name or likeness of a candidate, without regard to whether the communication can be understood as supporting or opposing the candidate, there is a realistic danger that the Rule will significantly compromise the First Amendment protections of not only Plaintiff, but many other organizations which seek to have a voice in political issue advocacy.

Accordingly, the Court declares that Rule 169.39b is unconstitutional on its face, and the Court enjoins the State from enforcing Rule 169.39b.